# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### November 15, 2005 Session

## STATE OF TENNESSEE v. JARROD JOHNSTON SLAUGHTER

**Direct Appeal from the Circuit Court for Madison County**
**No. 04-777     Roger Page, Judge**

---

**No. W2005-00442-CCA-R3-CD  - Filed January 25, 2006**

---

The appellant, Jarrod Johnston Slaughter, was convicted by a jury in the Madison County Circuit Court of driving under the influence (DUI), third offense.  He received a sentence of eleven months, and twenty-nine days, with 208 days to be served in confinement.  On appeal, the appellant challenges the sufficiency of the evidence supporting his conviction and the length of confinement imposed by the trial court.  Upon our review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. AND J.C. MCLIN, JJ., joined.

Mark L. Agee and Jason C. Scott, Trenton, Tennessee, for the appellant, Jarrod Johnston Slaughter.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; James G. Woodall, District Attorney General; Angela Scott, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I.  Factual Background

Frank Yalda, an officer with the Jackson Police Department, testified at trial that at approximately 2:00 or 3:00 a.m. on March 27, 2004, he was sitting in his marked police vehicle in the parking lot of the Hamilton Hills shopping center.[1]  At that time, there were no other cars in the

---

[1] We have gleaned the facts from a "Statement of Evidence" which was prepared by the appellant and included in the record.  The record does not reflect that the appellant followed the procedure for preparing a statement of evidence as outlined in Rule 24(c) and (e) of the Tennessee Rules of Appellate Procedure.  See State v. Turner, 914 S.W.2d 951,

(continued...)

parking lot because the only businesses that were open were "the Fusebox and Jimmy D's." The shopping center was part of Officer Yalda's patrol area, and he was there because the clubs were getting ready to close.

Between 2:15 and 3:15 a.m., Officer Yalda noticed, about fifty to sixty-five feet away from his vehicle, a green Ford Ranger truck drive over a "grassy, shopping center median thing with a curb around it." After witnessing the truck drive over the median, Officer Yalda began driving toward the truck. By the time Officer Yalda reached the truck, it had traveled ten or twelve feet past the median and stopped. When Officer Yalda approached the truck, the appellant, who was driving the truck, rolled down his window. Officer Yalda stood near the vehicle and asked the appellant what had happened. Officer Yalda opined that the appellant was "not very coherent at the time." Officer Yalda asked the appellant for his driver's license and noticed an odor of alcohol. The appellant had no difficulty retrieving his driver's license from his wallet for the officer to examine. Officer Yalda asked the appellant to exit the truck. As the appellant exited, Officer Yalda noticed that the odor of alcohol was coming from the appellant, not the truck.

After getting out of the truck, the appellant took two steps away from the vehicle. Because of the short distance, Officer Yalda was unable to determine whether the appellant's balance was impaired. Officer Yalda asked the appellant if he had been drinking alcoholic beverages, and the appellant responded that he had consumed four beers; the appellant did not mention the time period in which the beers were consumed. Officer Yalda noted that the appellant's speech was "somewhat slurred," and his responses were "slightly delayed."

Officer Yalda asked the appellant if he had any medical conditions or if he was taking any medication. The appellant responded negatively to both questions. The officer then administered three field sobriety tests to the appellant. Officer Yalda noted that the appellant appeared to be able to comprehend his instructions regarding the field sobriety tests. First, the officer asked the appellant to recite the alphabet, beginning with the letter A and ending with the letter Z. The appellant replied, "ABC1234." Officer Yalda then administered the "straight stance" test. He asked the appellant to stand with his feet together, holding his hands flat at his sides while closing his eyes and tilting his head back. Officer Yalda explained that the "straight stance" test is "used to judge a subject's balance." The appellant swayed during his performance of the test. Finally, Officer Yalda asked the appellant "to perform the straight walk, heel-to-toe, which consists of walking ten steps straight forward and then turning around and walking ten steps back to where the officer is." Officer Yalda testified that, as was his habit on every field sobriety test, he demonstrated what he wanted the appellant to do. While performing the test, the appellant stumbled on the ninth and tenth steps and turned in the wrong direction. Officer Yalda stated that field sobriety tests are "pass/fail" tests, and, in his opinion, the appellant failed all three tests.

[1](...continued)
960-61 (Tenn. Crim. App. 1995). Regardless, the State has not objected to the statement of evidence.

Officer Yalda concluded, based upon his experience and observations, that the appellant was under the influence and was too impaired to drive. Accordingly, he arrested the appellant for DUI and took him to the police station for booking. After they arrived at the station, Officer Yalda asked the appellant to submit to a blood alcohol test. He read to the appellant an implied consent form, which contained the penalties for refusing to submit to the blood alcohol test. Officer Yalda stated that the appellant understood the implied consent form, but he refused to submit to the blood alcohol test and further refused to sign the implied consent form.

On cross-examination, Officer Yalda acknowledged that the preliminary hearing transcript reflected that he had testified that the appellant admitted consuming a "couple of beers." However, Officer Yalda did not independently recall his preliminary hearing testimony.

Officer Yalda asserted that he stopped the appellant because of "his driving performance and going over the barrier." However, the officer conceded that at the time of the stop, he did not know if the appellant had committed a crime. Officer Yalda read his preliminary hearing testimony in which he stated that the appellant had committed the offense of reckless driving. Thereafter, the officer stated that with his memory refreshed, he could testify that he stopped the appellant for reckless driving; however, he did not arrest the appellant for reckless driving. Officer Yalda explained that he stopped the appellant to determine why the appellant was acting the way he was, namely why he had driven over the embankment.

Officer Yalda stated that Officer Kelsey was present at the time the appellant was stopped. However, Officer Kelsey did not participate in conducting the field sobriety tests.

Dean Bartel, an expert in field sobriety testing, testified on behalf of the appellant. Bartel stated that he had previously been a deputy sheriff with the Shelby County Sheriff's Office and had been a Sergeant in the Metro DUI Squad, in Shelby County. During his last five years in the DUI Squad, Bartel worked as a DUI instructor.

Bartel stated that driving into a curb and the presence of an odor of alcohol are not necessarily indicators that a driver is impaired; however, he said they could be. Bartel stated that the National Highway Traffic Safety Administration (NHTSA) and the United States Department of Transportation (USDOT) have validated and approved three standardized field sobriety tests: the horizontal gaze nystagmus test, the one leg stand test, and the walk and turn test. Bartel said that Tennessee uses the manual produced by the NHTSA.

Bartel stated that field sobriety tests are "not pass/fail." He stated that the tests contain "indicators that you look for . . . . If a person makes two or more errors on either test, that is your, what they call a decision point . . . where you can assume there's a possibility that the person is impaired."

Bartel testified that the correct name of the "heel to toe test" conducted by Officer Yalda is the walk and turn test. If given properly, the test is sixty-eight percent accurate in detecting

impairment; however, if the test is given improperly, the percentage of accuracy is reduced. Bartel opined that Officer Yalda did not provide accurate instructions for the walk and turn test. Bartel stated that the walk and turn test has nine indicators of impairment. Based upon Officer Yalda's testimony, Bartel concluded that the appellant exhibited only one indicator, an improper turn. Bartel asserted that one indicator did not suggest that the appellant was impaired.

Bartel stated that the ABC test is not a standardized test because adequate research has not been done to verify its accuracy. Nevertheless, the ABC test is listed in the NHTSA manual. The manual states that the ABC test may be used in determining impairment.

Based upon the foregoing, the jury found the appellant guilty of DUI. The appellant agreed to allow the trial court to determine his guilt of DUI, third offense. The trial court found that the instant conviction was indeed the appellant's third DUI offense. The trial court imposed a sentence of eleven months and twenty-nine days and ordered the appellant to serve 208 days of the sentence in confinement prior to being released on community corrections. On appeal, the appellant challenges the sufficiency of the evidence supporting his conviction and the length of confinement imposed by the trial court.

## II. Analysis

### A. Sufficiency of the Evidence

On appeal, a jury conviction removes the presumption of the appellant's innocence and replaces it with one of guilt, so that the appellant carries the burden of demonstrating to this court why the evidence will not support the jury's findings. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The appellant must establish that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Tenn. R. App. P. 13(e).

Accordingly, on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. See State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). In other words, questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, and not the appellate courts. See State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990).

Tennessee Code Annotated section 55-10-401 (2004) provides:[2]

_____

[2] We note that Tennessee Code Annotated section 55-10-401(a) and (b) provides that it is illegal to operate a motor vehicle "on the premises of any shopping center" while under the influence of an intoxicant. In the instant case, the proof is unrefuted that the appellant was driving in the parking lot of a shopping center. Regardless, the indictment charging the appellant with DUI specifically provided that the appellant drove or physically controlled a vehicle "upon a public highway and/or an area frequented by the public at large."

(a) It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park or any apartment house complex, or any other premises which is generally frequented by the public at large, while:

(1) Under the influence of any intoxicant, marijuana, narcotic drug, or drug producing stimulating effects on the central nervous system
. . . .

On appeal, the appellant specifically "contends that the State failed to prove beyond a reasonable doubt that he was driving or in physical control of a vehicle in an area generally frequented by the public at large." Specifically, the petitioner contends that because most of the businesses in the shopping center were closed, the parking lot was not an area frequented by the public at the time the offense was committed.

In the instant case, Officer Yalda testified that the appellant was driving a green Ford Ranger truck in a shopping center parking lot in a questionable manner. Officer Yalda explained that due to the hour, most of the businesses in the shopping center were closed. However, the two clubs that were open were getting ready to close. We note that this court has previously concluded that "parking lots are premises generally frequented by the public at large." State v. Steven Frederick Brinkley, No. M2003-02419-CCA-R3-CD, 2004 WL 2964706, at *6 (Tenn. Crim. App. at Nashville, Dec. 22, 2004), perm. to appeal denied, (Tenn. 2005). Accordingly, we conclude that the proof established that the appellant was in an area frequented by the public at large.

Next, we will address the remaining elements of the offense of DUI. As we noted earlier, Officer Yalda testified that the appellant was driving a motor vehicle. Further, Officer Yalda stated that the appellant smelled of alcohol, and he admitted drinking four beers. Additionally, in Officer Yalda's opinion, the appellant failed three field sobriety tests. The jury heard the testimony of the appellant's expert, Bartel, and obviously chose to accredit the State's witness as was their prerogative. Thus, we conclude that the proof at trial was sufficient for a jury to find the appellant guilty of DUI.

## B. Sentencing

As his final issue, the appellant challenges the length of confinement imposed by the trial court. Appellate review of the length, range or manner of service of a sentence is de novo. See Tenn. Code Ann. § 40-35-401(d) (2003). In conducting its de novo review, this court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statement by the appellant in

his own behalf; and (7) the potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210 (2003); see also State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991). The burden is on the appellant to demonstrate the impropriety of his sentence. See Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments. Moreover, if the record reveals that the trial court adequately considered sentencing principles and all relevant facts and circumstances, this court will accord the trial court's determinations a presumption of correctness. Id. at (d); Ashby, 823 S.W.2d at 169.

The appellant has failed to include a transcript of the sentencing hearing in the record for our review. Tennessee Rule of Appellate Procedure 24(b) provides that "the appellant shall have prepared a transcript of such part of the evidence or proceedings as is necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." Because of this failure, we are unable to review this issue. "In the absence of an adequate record on appeal, this court must presume that the trial court's rulings were supported by sufficient evidence." State v. Oody, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991); see also State v. Carl E. Muncey, No. E2003-02314-CCA-R3-CD, 2004 WL 1488576, at *3 (Tenn. Crim. App. at Knoxville, July 2, 2004).

**III. Conclusion**

Based upon the foregoing, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE